IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CITIZENS ASSET FINANCE, INC. *f/k/a* RBS ASSET FINANCE, INC., <br><br> Plaintiff, <br><br> v. <br><br> STAFFORD TRANSPORT OF LOUISIANA, INC. and CUSTOM ECOLOGY, INC. *f/k/a* STAFFORD LOGISTICS HOLDINGS, INC., <br><br> Defendants. | Case No. |

**VERIFIED COMPLAINT FOR BREACH OF LEASE,
BREACH OF GUARANTY, DETINUE, AND INJUNCTIVE RELIEF**

NOW COMES Plaintiff Citizens Asset Finance, Inc. *f/k/a* RBS Asset Finance, Inc. ("Citizens"), by and through its undersigned counsel, and for its Verified Complaint for Breach of Lease, Breach of Guaranty, Detinue, and Injunctive Relief against Defendants Stafford Transport of Louisiana, Inc. ("Stafford") and Custom Ecology Holdings, Inc. *f/k/a* Stafford Logistics Holdings, Inc. ("Custom" and, together with Stafford, the "Defendants"), Citizens respectfully alleges as follows:

## PARTIES

1.  Citizens is a national banking association with its principal place of business located at One Citizens Plaza Providence, RI 02903. Citizens is a division of Citizens Bank, N.A.

2.  Stafford, which does business as Custom Ecology, Inc., is a Louisiana corporation with its principal place of business located at 3842 Highlands Parkway, Smyrna, GA 30082. Stafford is a freight trucking company.

3.  Defendant Custom is a Delaware corporation with its principal place of business located at 6375 Discovery Boulevard, Mableton, GA 30126.

## JURISDICTION AND VENUE

4.  This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between Citizens and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.  Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants do business in this judicial district and a substantial part of the events giving rise to Citizen's claims occurred in this judicial district.

## GENERAL ALLEGATIONS

6. On or about June 27, 2014, Citizens and Stafford entered into that certain Master Lease Agreement dated June 27, 2014 (the "Master Lease"). A true and correct copy of the Master Lease is attached and incorporated hereto as **Exhibit A**.

7. In connection with the Master Lease, between June 30, 2014 and December 24, 2014, Citizens and Stafford entered into the following Lease Schedules: (i) that certain Lease Schedule No. 001 dated June 30, 2014 (the "1st Schedule"); (ii) that certain Lease Schedule No. 002 dated August 22, 2014 (the "2nd Schedule"); (iii) that certain Lease Schedule No. 003 dated September 24, 2014 (the "3rd Schedule"); and (iv) that certain Lease Schedule No. 005 dated December 24, 2014 (the "4th Schedule" and, collectively with the 1st Schedule, the 2nd Schedule, and the 3rd Schedule, the "Schedules"). True and correct copies of the Schedules are attached and incorporated hereto as **Group Exhibit B**. The Master Lease and Schedules shall collectively be referred to hereinafter as the "Lease"[1].

8. In order to induce Citizens to enter into the Lease, on June 27, 2014, Custom executed and delivered to Citizens that certain Guaranty dated June 27, 2014

---

[1] All capitalized terms used herein (and which are not otherwise defined in this Complaint) shall have the respective meanings given to such terms in the Lease.

(the "Guaranty"), pursuant to which Custom unconditionally and irrevocably guaranteed all of Stafford's obligations under the Lease. A true and correct copy of the Guaranty is attached and incorporated hereto as **Exhibit C**.

9. Pursuant to the Lease, Citizens leased Stafford those certain trailers and related personal property that are further described on **Exhibit D** hereto (collectively, the "Equipment") in exchange for, among other things, Stafford's promise to make monthly payments of Rents to Citizens as contemplated under the Lease. *See* Lease (**Ex. A**), ¶ 2 and Schedules (**Grp. Ex. B**), ¶¶ 3. Stafford further promised to deliver certain financial statements to Citizens on a going forward basis. *See* Lease (**Ex. A**), ¶¶ 5(a) and 9.

10. Although Citizens leased the Equipment to Stafford pursuant to the Leased Documents, Citizens also maintains precautionary, perfected rights, titles, and interests in the Equipment by, amongst other things: (i) noting such rights, titles, and interests on those certain Certificates of Title issued by the states of Louisiana and Maine in connection with the Equipment; and (ii) filing those certain UCC Financing and Continuation Statements with the Clerk of the Court of Caddo Parish County, Louisiana that were assigned File Nos. 09-1249953 and 09-1393151 (collectively, the "Equipment Perfection Documents"). True and correct copies of

the Equipment Perfection Documents are attached and incorporated hereto as **Group Exhibit E**.

11.     The Lease is independently in default based on, at least, each and every one of the following events (collectively, the "Defaults"):

(i)     Stafford's failure to pay Rents as required under Section 2 of the Master Lease and Section 3 of the Schedules including, without limitation, Stafford's failure to make full and timely payments of Rents from November 2019 through the present;

(ii)    Stafford's failure to provide Citizens with quarterly financial statements on an ongoing basis, as required under Section 5(a)(2) of the Master Lease;

(iii)   Stafford's failure to provide notices to Citizens regarding certain Equipment plate numbers and state registrations, as required under Section 5(e) of the Master Lease;

(iv)    Stafford's unauthorized sales or other dispositions of certain Equipment, as precluded by Section 16(c) of the Master Lease;

(v)     Stafford's failure to return the Equipment to Citizens within 10 days of Citizens' cancellation of the Lease, as required under Section 11(b) of the Master Lease; and

(vi)    The defaults at issue in the Radius Bank Lawsuit, the Wintrust Lawsuit, and the BMO Lawsuit (as those terms are defined hereinafter), pursuant to Section 16(e) of the Master Lease.

12.     By way of, among other correspondence, letters dated April 25, 2018, June 15, 2018, March 3, 2020, October 23, 2020 and March 3, 2021, Citizens notified Defendants of the Defaults and the cancellation of the Lease, demanded that Defendants cure all Defaults and immediately return the Equipment to Citizens, and

reminded Defendants of Citizens' rights and remedies under the Lease and Guaranty (collectively, "Notice of Default"). A true and correct copy of the Notice of Default is attached and incorporated hereto as **Exhibit F**. For sake of clarity, the Leases were formally cancelled by Citizens no later than March 3, 2021.

13. Notwithstanding Citizens' Notice of Default, and other and prior demands from Citizens, to date, Defendants have failed to cure the Defaults or otherwise fulfill their respective obligations under the Lease and Guaranty. Defendants have also failed to provide Citizens with possession of the Equipment and have failed to disclose basic information regarding the Equipment, including the present location of the Equipment, despite Citizens' repeated demands for the same.

14. In light of the Defaults, the unpaid amounts that are now immediately due and owing to Citizens by Defendants under the Lease and Guaranty are as follows:

> (i) all accrued and unpaid rent as of the date of the Defaults ($1,288,627.06); plus
>
> (ii) Stipulated Loss Value as of the date of the most recent Defaults (no less than $1,691,522.91); plus
>
> (iii) attorneys' fees and costs (no less than $39,225.39); plus
>
> (iv) Late Charges (no less than $60,111.66).

Moreover, interest and default interest, which have accrued and continue to accrue, are also payable by Defendants to Citizens pursuant to the terms of the Lease and Guaranty.

### **COUNT I – BREACH OF LEASE AGAINST STAFFORD**

15. Citizens incorporates by reference herein the allegations contained in paragraphs 1 through 14 above, as this paragraph 15 of Count I.

16. By virtue of each and every one of the Defaults, Stafford has breached the Lease.

17. As a result of the Defaults and Stafford's failure to cure the same, Citizens exercised its rights under the provisions of the Lease and declared immediately due and owing all amounts due thereunder.

18. Despite Citizens' repeated demands, Stafford has failed to pay Citizens the outstanding indebtedness due under the Lease. Indeed, Stafford has admitted to Citizens that neither Stafford nor Customs is capable of making such payments.

19. Under the Lease, Citizens is entitled to recover from Stafford its costs and attorneys' fees incurred in the enforcement of Citizens' rights and remedies thereunder. *See* Master Lease (**Ex. A**), ¶ 17(c).

20. Citizens is the current holder of the Lease and has performed all of the terms, conditions, and covenants required to be performed by Citizens under the

Lease, and all conditions precedent for the maintenance of this action have been performed, satisfied or waived.

21. After applying all credits to the Lease obligations, as of June 1, 2021, the amount due and owing by Stafford to Citizens under the Lease is $3,079,487.02, not including certain interest, fees, and costs that have accrued on and prior to that date. Interest, fees, and costs have accrued and will continue to accrue.

## COUNT II – BREACH OF GUARANTY AGAINST CUSTOM

22. Lender incorporates by reference herein the allegations contained in paragraphs 1 through 21 above, as this paragraph 22 of Count II.

23. Pursuant to the terms of the Guaranty, Custom unconditionally agreed to repay Citizens the full amounts due and owing from Stafford under the Lease, including interest and other fees and costs. *See* Guaranty (**Ex. C**), ¶¶ 2-3.

24. Citizens relied on Custom's representations and agreements reflected in the Guaranty when Citizens agreed to enter into the Lease with Stafford.

25. Each of the Defaults also constitutes events of default under the Guaranty. *See* Guaranty (**Ex. C**), ¶ 11.

26. Following the Defaults, Citizens demanded that Custom pay the full amounts due and owing under the Lease pursuant to Custom's obligations under the Guaranty.

27. Despite demand from Citizens, to date Custom has failed to cure the Defaults or otherwise satisfy its obligations under the Guaranty.

28. The Guaranty provides that Citizens is entitled to recover from Custom the attorney's fees and court costs incurred by Citizens in enforcing the obligations represented by the Lease and Guaranty. *See* Guaranty (**Ex. C**), ¶¶ 2 and 10.

29. Citizens is the current holder of the Guaranty and has performed all of the terms, conditions, and covenants required to be performed by Citizens under the Guaranty, and all conditions precedent for the maintenance of this action have been performed, satisfied or waived.

30. After applying all credits to the Lease and Guaranty obligations, as of June 1, 2021, the amount due and owing by Custom to Citizens under the Guaranty is $3,079,487.02, not including certain interest, fees, and costs that have accrued on and prior to that date. Interest, fees, and costs have accrued and will continue to accrue.

### COUNT III – DETINUE/TURNOVER OF EQUIPMENT AGAINST DEFENDANTS

31. Lender incorporates by reference herein the allegations contained in paragraphs 1 through 30 above, as this paragraph 31 of Count III.

32. The Lease is governed by Illinois law. *See* Master Lease (**Ex. A**), ¶ 19(h). In Illinois, "[d]etinue is a possessory action for the recovery of specific

personal property and damages for its detention." *Peco Pallet, Inc. v. Nw. Pallet Supply Co.*, 1:15-CV-06811, 2016 WL 5405107, *7 (N.D. Ill. Sept. 28, 2016). A finding for plaintiff is proper in detinue where it is established that its right to possession is superior to that of defendant." *L & LC Trucking Co. v. Jack Freeman Trucking Co.*, 36 Ill.App.3d 186, 188 (1st Dist. 1976).

33. Pursuant to the Lease and Equipment Perfection Documents, Citizens owns the Equipment or, at a minimum, has first-priority, perfected security interests in the Equipment.

34. Pursuant to the terms of the Lease, the Defaults grant Citizens a right to immediate possession of the Equipment. *See* Master Lease (**Ex. A**), ¶ 17(a).

35. As a result of each of the Defaults, which are continuing and have not been cured to date, Citizens is lawfully entitled to immediate possession of the Equipment, which is being wrongfully detained by Stafford and/or Custom.

36. Citizens' ownership of the Equipment and/or perfected security interests, coupled with Defendants' Defaults, establish that Citizens' right to immediate possession of the Equipment is superior to that of the Defendants and all other parties.

37. Upon information and belief – including the fact that portions of the Equipment were originally delivered to Cobb County, Georgia, which is also where

Defendants' principal places of business are located – Citizens believes that some or all of the Equipment is currently located at or near the Defendants' facilities in Cobb County, Georgia.

38. Citizens has demanded that Defendants immediately return the Equipment and provide information related to the located of the same on multiple occasions. This Complaint, in addition to previous demands, shall constitute demand upon Defendants to surrender possession of the Equipment to Citizens. Despite demand, to date, Defendants have failed to return the Equipment to Citizens or disclose to Citizens where the Equipment is located.

39. None of the Equipment has been taken for any tax, assessment or fine levied by virtue of any law of any state against the property of Citizens, or against Citizens individually, nor seized under any lawful process against the goods and chattels of Citizens subject to such lawful process, nor held by virtue of any order of replevin against Citizens.

40. The Lease and Guaranty provide for the payment, by Defendants, of Citizens' costs and attorneys' fees incurred in connection with this action. *See* Master Lease (**Ex. A**), ¶ 17(c); *see also* Guaranty (**Ex. C**), ¶¶ 2 and 10.

41. Citizens claims the fair market value of the Equipment not returned to Citizens.

42. Citizens has satisfied all of the obligations and conditions precedent required of it in order to enforce the Lease.

### COUNT IV – INJUNCTIVE RELIEF AGAINST DEFENDANTS

43. Lender incorporates by reference herein the allegations contained in paragraphs 1 through 42 above, as this paragraph 43 of Count IV.

44. As detailed above, Citizens has ascertainable claims for breach of contract and for immediate possession of the Equipment. *See* Counts I-III of this Complaint.

45. Despite repeated demands by Citizens, Defendants have failed to remit possession of the Equipment to Citizens, and Defendants have failed to inform Citizens where the Equipment is currently located.

46. Based on the nature of the Equipment (trailers and related items), the Equipment may be moved throughout the United States at any given moment. The Equipment is not armed with tracing technology that would allow Citizens to ascertain the location of the Equipment.

47. Stafford and/or Custom continue to use the Equipment for their own benefit (including, without limitation, in their revenue operations and generating proceeds from the use thereof), and may be allowing third-parties to use and

encumber the Equipment, all of which violates Defendants' obligations under the Lease and Guaranty, depreciates the value of the Equipment and harms Citizens.

48. The Equipment continues to depreciate and deteriorate as a result of Defendants' continued wrongful use thereof.

49. The repeated failures and inability of Defendants to cure the payment Defaults on the Lease and Guaranty indicates that Defendants would likely be unable to satisfy money judgments entered against them. Indeed, Defendants have admitted their inability to satisfy such contemplated money judgments in written correspondence to Citizens on several occasions prior to the filing of this Complaint. Moreover, since 2020, at least three other lawsuits substantially similar to this action have been filed against one or both of Defendants by other equipment lessors/lenders. *See Radius Bank v. Stafford Transport of Louisiana, Inc. d/b/a Custom Ecology, Inc.*, No. 3:20-0591-B (N.D. Texas 2020) (the "Radius Lawsuit"), *Wintrust Commercial Finance v. Custom Ecology, Inc.*, No. 4:20-cv-1104 (S.D. Texas 2020) (the "Wintrust Lawsuit"), and *BMO Harris Bank N.A. v. Stafford Transport of Louisiana, Inc. et al,*, No. 1:20-CV-01731 (N.D. Georgia 2020) (the "BMO Lawsuit").

50. In the Radius Lawsuit, a federal court in Texas granted Radius Bank a preliminary injunction prohibiting Stafford from using approximately 110 trailers

based on, among other things, Stafford's failure to pay Radius Bank amounts due under similar leasing arrangements and Stafford's apparent inability to satisfy a future money judgment. *See Radius Bank v. Stafford Transp. of Louisiana, Inc*., 3:20-CV-0591-B, 2020 WL 3129639, *1 (N.D. Tex. June 12, 2020), *appeal dismissed sub nom. Radius Bank v. Stafford Transp. of Louisiana, Inc*., 20-10626, 2020 WL 7390991 (5th Cir. Aug. 4, 2020).

51. Similarly, in the Wintrust Lawsuit, Wintrust sought to repossess another 88 trailers due to Stafford being more than $3.9 million in arrears to Wintrust. *See Id.* at *3*. In the BMO Lawsuit, a $4,621,392.27 judgment was entered against Defendants on January 5, 2021. *See* BMO Lawsuit at Dkt. No. 47.

52. Additionally, there appear to have been two more lawsuits filed against Stafford since 2020 related to its failure to make payments it owes to creditors. *See Blanchard Machinery Company v. Stafford Transport Inc., et al.*, Lexington County Court of Common Pleas, SC Case No. 2020-CP-3203351 and *Altabank v. Stafford Transport Inc., et al.*, Cobb County State Court, GA Case No. 20-A-2428.

53. Accordingly, Citizens has no adequate remedy at law for the injury it continues to sustain to its rights, titles, and interests in and to the Equipment. Indeed, future money judgments against Defendants are very likely useless to Citizens given

Defendants' serious financial difficulties and inability to pay their obligations when due in connection with at least four, separate, similarly situated equipment lessors.

54. Given such inability, Citizens will suffer irreparable injury if Defendants continue to operate the Equipment. So long as the Equipment continued to be used (all to Defendants' windfall and Citizens' detriment), there is a serious, continued risk of impairment, liability, depreciation and encumbrance, which Citizens specifically seeks to forestall by way of a preliminary and/or permanent injunction.

55. The continued and threatened injury to Citizens' rights, titles, and interests in and to the Equipment outweighs any damage that Defendants would suffer from their use of the Equipment being temporarily restrained because, as detailed above, such use has been and will continue to be wrongful in light of the Defaults and the terms of the Lease.

56. The balance of equities also favors Citizens, as Defendants are putting the Equipment at risk by continuing to operate the Equipment, and "it is in the public interest to encourage parties to abide by their contractual obligations." *Radium Lawsuit,* 2020 WL 3129639 at *7. The Defendants' contractual obligations to Citizens include returning the Equipment due to the Defaults.

57. Finally, Defendants have the ability to locate the Equipment and temporarily prevent the Equipment from being used.

### COUNT V
### (Attorneys' Fees Under Contract, O.C.G.A. §§ 13-1-11 and 13-6-11 as to all Defendants)

58. Lender incorporates by reference herein the allegations contained in paragraphs 1 through 56 above, as this paragraph 57 of Count V.

59. Defendants have acted in bad faith, have been stubbornly litigious, and have caused Citizens unnecessary trouble and expense.

60. The Lease and Guaranty provide for the payment, by Defendants, of Citizens' costs and attorneys' fees incurred in connection with this action. *See* Master Lease (**Ex. A**), ¶ 17(c); *see also* Guaranty (**Ex. C**), ¶¶ 2 and 10.

61. Citizens is entitled to collect attorneys' fees and expenses of litigation from Defendants as a result of its conduct and pursuant to the subject agreements.

**WHEREFORE**, Citizens respectfully requests that judgment be entered in its favor and against Defendants as follows:

A. Awarding Citizens monetary damages in an amount to be established through evidence acceptable to this Court, which continues to accrue, but shall be no less than $3,079,487.02, plus applicable interest;

B. Entering a preliminary injunction against Defendants prohibiting them from using, encumbering, and/or transferring the Equipment and prohibiting Defendants from removing the Equipment from Cobb County, Georgia and, to the extent the Equipment is not located in Cobb County, Georgia, requiring Defendants to immediately return the same to Cobb County, Georgia and to inform Citizens where the Equipment is currently located;

C. Entering a permanent injunction against Defendants prohibiting them from using, encumbering, and/or transferring the Equipment, and prohibiting Defendants from removing the Equipment from Cobb County, Georgia and, to the extent the Equipment is not located in Cobb County, Georgia, requiring Defendants to immediately return the same to Cobb County, Georgia and to inform Citizens where the Equipment is located;

D. Requiring Defendants immediately turnover possession of the Equipment to Citizens, and entering a money judgment in favor of Citizens and against Defendants for the value of the Equipment not delivered to Citizens and for damages suffered by Citizen due to Defendants' wrongful detention of the Equipment;

E. Alternatively and/or additionally, entering an order compelling Defendants to deliver the Equipment to Citizens, at a location designated by Citizens within fourteen (14) days of the entered order, and granting Citizens whatever further relief the Honorable Court deems just and appropriate.

F. Alternatively and/or additionally, entering an order compelling Defendants to make the Equipment available to Citizens for inspection and/or removal, at a time designated by Citizens, within fourteen (14) days of the entered order, and granting Citizens whatever further relief the Honorable Court deems just and appropriate.

G. Awarding Citizens any and all additional expenses incurred by Citizens in connection with this cause including, but not limited to, Citizens' court costs and attorneys' fees; and

H. Awarding Citizens any additional relief this Honorable Court deems just and appropriate.

This 7th day of June, 2021
.

                        */s/ Jeffrey L. Mapen*
                        Jeffrey L. Mapen
                        Georgia Bar No. 469936
                        E-mail:  jeff.mapen@nelsonmullins.com
                        Jessica R. Watson
                        Georgia Bar No. 760076

>E-mail: jessica.watson@nelsonmullins.com
>
>Michael D. Leifman
>Email: mleifman@vedderprice.com
>William W. Thorsness
>wthorsness@vedderprice.com
>Vedder Price P.C.
>222 North LaSalle Street
>Chicago, IL 60601
>
>*Pro Hac Vice Forthcoming*
>
>*Attorneys for Plaintiff Citizens Asset Finance, Inc. f/k/a RBS Asset Finance, Inc.*

NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street/ 17th Floor
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

## VERIFICATION

| STATE OF | ) | New Hampshire |
|---|---|---|
|  | ) ss: |  |
| COUNTY OF | ) | Hillsborough |

David J. Zalzal, being duly sworn, deposes and says:

I am employed by CITIZENS ASSET FINANCE, INC. f/k/a RBS ASSET FINANCE, INC. and a division of Citizens Bank, N.A. ("Lender"), plaintiff in the above-referenced action, as a Workout Officer. I am authorized to give this verification on Lender's behalf. I have personal knowledge of the facts set forth in the Verified Complaint, except as to those matters alleged upon information and belief, and as to those matters, I believe them to be true. The documents attached to the Verified Complaint as Exhibits are true and correct copies of the originals of such documents.

The basis for my knowledge and belief is Lender's books and records, which were made at or near the time of the events recorded in the records by or from information transmitted by a person with knowledge. These records are kept in the ordinary course of a regularly conducted business activity and it is Lender's regular practice to keep such records.

_____
DAVID J. ZALZAL

**SUBSCRIBED AND SWORN**
to before me this __3__ day of June, 2021.

_____
Notary Public

Samantha J Courtemanche
Notary Public State of New Hampshire
My Commission Expires March 3, 2026